UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TRUSTEES OF THE CONSTRUCTION INDUSTRY AND LABORERS HEALTH AND WELFARE TRUST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>INTERSTATE HOTEL INSTALLATION,<br><br>Defendant. | Case No. 2:12-cv-00353-MMD-GWF<br><br>ORDER<br><br>(Def.'s Motion for Summary Judgment – dkt. no. 13;<br>Plf.'s CounterMotion for Summary Judgment – dkt. no. 15;<br>Plf.'s Motion to Withdraw CounterMotion – dkt. no. 27;<br>Plf.'s Motion for Leave to File Sur-Reply and for Oral Argument – dkt. no. 28) |

**I.   SUMMARY**

Before the Court are various motions brought by the parties in this Employee Retirement Income Security Act ("ERISA") action. Defendant Interstate Hotel Installation ("Interstate") brings this Motion for Summary Judgment, which Plaintiffs opposed. (*See* dkt. no. 13.) Plaintiffs subsequently filed a Motion for Leave to File Sur-Reply and for Oral Argument. (Dkt. no. 28.)

Plaintiffs also filed a CounterMotion for Summary Judgment (dkt. no. 15), which they subsequently sought to withdraw through a Motion to Withdraw CounterMotion (dkt. no. 27.)

**II.   BACKGROUND**

Plaintiffs are Trustees of the Construction Industry and Laborers Health and Welfare Trust, Trustees of the Construction Industry and Laborers Joint Pension Trust, Trustees of the Construction Industry and Laborers Vacation Trust, and Trustees of the

Southern Nevada Laborers Local 872 Training Trust (collectively "Trust Funds" or "Plaintiffs"). Interstate, a Nevada corporation, employed persons who performed work covered by a collective bargaining agreement between Interstate and the Laborers International Union of North America, Local 872 ("the Local"). The Trust Funds are ERISA employee benefit trust funds that provide pension, health and welfare, vacation, and training benefits to employees covered by the collective bargaining agreement between Interstate and the Local.

Plaintiffs filed their Complaint in this case on March 5, 2012, seeking delinquent contributions they allege an entitlement to through various collective bargaining agreements, trust agreements that established the Trust Funds, and provisions of ERISA-mandated reports and contributions. (*See* dkt. no. 1 at ¶¶ 4-9.) They seek contributions for the period between July 1, 2003, and March 31, 2009. This is the third such action brought by the Trust Funds. They had first filed suit on December 31, 2007, for an audit and contributions covering the period from January 1, 2001, to May 28, 2008. (*See* dkt. no. 13-1.) That suit was voluntarily dismissed per a settlement agreement entered into on May 27, 2008. (Dkt. no. 13-3.) The Trust Funds brought a second suit on December 11, 2009, for an audit and contributions for July 1, 2003, and March 31, 2009. (*See* dkt. no. 13-4.) The second suit was also voluntarily dismissed on September 16, 2010, pursuant to a settlement agreement. (Dkt. no. 13-6.)

After filing an Amended Answer to the Complaint (dkt. no. 8), Interstate filed this Motion for Summary Judgment on April 13, 2012 (dkt. no. 13). Five days later, the Trust Funds filed their CounterMotion for Summary Judgment (dkt. no. 15), but later filed a Motion to Withdraw the CounterMotion (dkt. no. 27). Good cause appearing, the Court grants the Trust Funds' Motion to Withdraw, and addresses the remaining two Motions below.

### III.   LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do

more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV.   DISCUSSION

Interstate brings its Motion for Summary Judgment arguing that the Trust Funds' claims are barred pursuant to the two dismissal rule, and that the plain language of Fed. R. Civ. P. 41(a)(1) bars this suit based on the prior dismissals. (*See* dkt. no. 13 at 8-9.) Interstate also argues that the Trust Funds' claims for contribution prior to March 5, 2006, are time-barred. (*Id.* at 9-10.) In the alternative, Interstate requests partial summary judgment on the Trust Funds' contribution claims for one employee that was subject to a prior settlement. (*Id.* at 10.)

### A.   Two Dismissal Rule

Fed. R. Civ. P. 41(a)(1) governs voluntary dismissal of actions by a plaintiff, and provides that a plaintiff may voluntarily dismiss an action, without a court order, by filing a notice of dismissal or, where the defendant has answered or filed a motion for summary judgment, a stipulation of dismissal signed by all the parties that have appeared in the action. It further provides that "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." Fed. R. Civ. P. 41(a)(1)(B). "[A] voluntary dismissal is presumed to be 'without prejudice' unless it states otherwise, but a voluntary dismissal of a second action operates as a dismissal on the merits if the plaintiff has previously dismissed an action involving the same claims." *Commercial Space Mgmt. Co., Inc. v. Boeing Co., Inc.*, 193 F.3d 1074, 1076 (9th Cir. 1999). This rule is known as the "two dismissal rule." *Id.*

However, "[a] trust fund that wishes to preclude the application of res judicata to a future action based on a claim that the employers' payments have been inaccurate, can reserve that right in any agreement that results in the dismissal with prejudice of an

action for delinquent payments." *Int'l Union of Operating Engineers-Employers Const. Indus. Pension, Welfare & Training Trust Funds v. Karr*, 994 F.2d 1426, 1432 (9th Cir. 1993). "*Karr* does not prohibit parties to a lawsuit for delinquent contributions from *agreeing* to reserve plaintiffs' right to conduct an audit and seek additional amounts owing at some later time." *Bd. of Trustees of Auto. Indus. Welfare Fund v. Crown Chevrolet*, No. C 09-0466, 2009 WL 4572738, at *5 (N.D. Cal. Dec. 1, 2009).

In their first stipulated dismissal, the parties expressly agreed that Interstate would "waive any and all time related defenses including, but not limited to, statute of limitations . . ." for the period of time from the date of the Complaint to 60 days after compliance with the audit agreed to in the stipulation. (Dkt. no. 15-3 at ¶ 2.) After filing of the second suit, the parties entered into a settlement agreement which specifically reserved the right to pursue further claims for potential contribution deficiencies discovered after the completion of the audit. (Dkt. no. 15-5 at ¶ 6.) Applying the two-dismissal rule in this circumstance would flout the parties' settlement agreement, run counter to the spirit of *Karr*, and would serve an injustice to the Trust Funds' expectation that Interstate would comply with the terms of the contract it entered into. The parties' agreement ought not to be disturbed, particularly where that agreement was signed by the Court. (*See* dkt. no. 15-6.)

### B. Statute of Limitations

Interstate also argues that the six-year statute of limitations applicable to the Trust Funds' claim preclude them from seeking contributions for the period prior to March 5, 2006 (six years before this suit was filed). *See Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program*, 222 F.3d 643, 648 (9th Cir. 2000) (holding that applicable statute of limitations for an ERISA action is that which governs suits on written contracts); NRS § 11.190(1)(b) (providing a six-year limitation period for actions on a written contract). Since contracts between parties limiting the right to plead the statute of limitations are enforceable, Interstate's argument fails for the reasons set forth below. *See Abramson v. Brownstein*, 897 F.2d 389, 393 (9th Cir. 1990) (noting that under

1  California law, parties to a contract may waive the running of the statute by express
2  agreement); *Matter of VMS Ltd. P'ship Sec. Litig.*, 26 F.3d 50, 51 (7th Cir. 1994) (noting
3  that "a promise not to plead the statute of limitations, made during the course of
4  settlement negotiations, is enforceable").

5  Interstate waived any statute of limitations defense when it entered into the first
6  settlement agreement. In their May 27, 2008, agreement, the parties agreed that
7  Interstate would "waive any and all time related defenses, including but not limited to,
8  statute of limitations . . . on the passage of time from December 31, 2007 . . . to a date
9  sixty (60) days after the contract compliance audit in this matter has been completed."
10  (*See* dkt. no. 13-3 at ¶ 2.)  The Trust Funds request contributions for the period dating
11  back to July 1, 2003.  The Trust Funds filed their second suit on December 11, 2009,
12  and Interstate concedes that the original settlement agreement applied up until this
13  point.  Therefore, the operative period to calculate the statute of limitations at that time
14  was from July 1, 2003, to December 31, 2007 (a total of 1654 days, or 4 years and 6
15  months).

16  The court-approved second stipulated agreement was entered into on September
17  16, 2010.  Even if the Court were to not toll the statute of limitations for the period
18  between the second stipulated dismissal on September 16, 2010, to March 5, 2012, the
19  date of the filing of this claim (a total of 537 days, or 1 year, 5 months and 19 days), the
20  oldest claim still falls just shy of the six-year statute of limitations.

21  Interstate seeks to alter the goal posts by arguing that the Court ought to calculate
22  the statute of limitations not from the date of the second stipulated dismissal, but from
23  some date between the filing of the second lawsuit and the September 16, 2010, date of
24  the second stipulated dismissal, since the audit over the disputed contributions was
25  completed before September 16, 2010.  However, it presents no evidence to allow the
26  Court to determine when the audit was completed, and instead points to a clause of the
27  second settlement agreement that states that an audit for the period through June 30,
28  2003, was completed.  (*See* dkt. no. 13-5 at 1.)  But this dispute concerns contributions

for the period *after* June 30, 2003. Indeed, the second paragraph of the second settlement agreement makes expressly clear that an audit for the period beginning July 1, 2003, has *not* been completed, since Interstate is compelled to provide "for inspection and audit its payroll and reasonably related records . . . from July 1, 2003 through June 30, 2008." (*Id.* at ¶ 2.) As a result, at the time the second settlement agreement was signed on September 16, 2010, no audit for the disputed period appears to have occurred, and therefore the first settlement agreement's waiver of the statute of limitations defense extended until September 16, 2010.

Interstate also seeks to characterize the second settlement agreement as a novation that superseded the waiver of the statute of limitations defense in the first agreement. The Court seriously doubts that the second settlement agreement applies to vacate the first agreement's waiver to resurrect from the grave Interstate's statute of limitations defense. But even if it did, equitably tolling the statute of limitations would be appropriate in this circumstance. *See Copeland v. Desert Inn Hotel*, 673 P.2d 490, 492 (Nev. 1983) (listing factors to consider when determining whether to apply doctrine of equitable tolling). Accordingly, the statute of limitations defense is unavailable to Interstate.

### C.     Partial Summary Judgment for Claims Relating to Anthony Davis

In the alternative, Interstate seeks partial summary judgment on the Trust Funds' claims for delinquent contributions relating to work performed by employee Anthony Davis. On January 8, 2008, Davis, through a representative from the Local, submitted a grievance to Interstate seeking back wages and benefits for hours worked from April 2007 through January 2, 2008. (*See* dkt. no. 13-2A.) On May 13, 2008, Interstate and Davis' representative entered into a settlement agreement where Interstate was to pay the Local a total of $11,465.44. (Dkt. no. 13-2B.) The check ultimately issued by Interstate stated that it was paid for a settlement "to include wage and benefits." (Dkt. no. 13-2C.)

///

The Court agrees with Interstate. The documents provided in support of Interstate's Motion indicate that the Local settled its claims over both back wages and benefits with Interstate, at least for the period between April 2007 through January 2, 2008. The Trust Funds argue that because they were not parties to the binding agreement between Interstate and the Local, the Davis settlement has no bearing on this action. However, as Interstate correctly points out, "[a] third party beneficiary who seeks to enforce a contract does so subject to the defenses that would be valid as between the parties." *Morelli v. Morelli*, 720 P.2d 704, 706 (Nev. 1986). Here, the Trust Funds are third party beneficiaries of the collective bargaining agreement signed between the Local and Interstate. *See, e.g.*, *Pierce Cnty. Hotel Emps. & Rest. Emps. Health Trust v. Elks Lodge*, 827 F.2d 1324, 1326 (9th Cir. 1987) (noting that benefits trust funds are third party beneficiaries of collective bargaining agreements between the employer and the union). Here, the Trust Funds are third party beneficiaries of the collective bargaining agreement, and cannot sue to recover delinquent contributions for payments received by the Local that included benefit contributions. It is irrelevant that Interstate agreed in the second settlement agreement to make Davis' employment records available for an audit. (*See* dkt. no. 13-5 at ¶ 2.) The Trust Funds thus fail to raise any triable issue of material fact as to delinquent contributions made for Davis' employment between April 2007 and January 2, 2008.

## V. CONCLUSION

In sum, Interstate's Motion for Summary Judgment on the Trust Funds' claims fails. However, the Court grants its request for partial summary judgment as to Anthony Davis' claims with respect to the period outlined above. As the Court's adjudication of Interstate's Motion did not require additional briefing or an oral hearing, the Trust Funds' Motion for Leave to File Sur-Reply and for Oral Argument is denied.

Accordingly, IT IS HEREBY ORDERED that Defendant Interstate's Motion for Summary Judgment (dkt. no. 13) is DENIED in part and GRANTED in part.

///

1  IT IS FURTHER ORDERED that Plaintiff Trust Funds' Motion to Withdraw CounterMotion for Summary Judgment (dkt. no. 27) is GRANTED. The Trust Funds' CounterMotion (dkt. no. 15) is hereby WITHDRAWN.

IT IS FURTHER ORDERED that the Trust Funds' Motion for Leave to File Sur-Reply and for Oral Argument (dkt. no. 28) is DENIED.

DATED THIS 5th day of March 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE